RECEIVED
IN LAKE CHARLES, LA

AUG 21 2006


ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JAMES O'REAR | : | DOCKET NO. 2:05 CV 0086 |
| VS. | : | JUDGE MINALDI |
| UNUM LIFE INSURANCE COMPANY OF AMERICA | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 16] filed by defendant, Paul Revere Life Insurance Company ("Paul Revere"). Plaintiff did not file an opposition.

## FACTS

Plaintiff, James O'Rear, is a 63 year-old, former employee of Lockheed Martin Operation Support, Inc. ("Lockheed Martin").[1] O'Rear last worked for Lockheed Martin in March 2002, shortly before he underwent surgery for spinal stenosis.[2] As part of Lockheed Martin's Employee Welfare Benefit Plan, O'Rear was covered by a long term disability policy, issued by Paul Revere.[3]

Paul Revere paid the plaintiff long-term disability benefits until September 2004, at which

---

[1] *See* Defendant's Memorandum in Support of Motion for Summary Judgment, p. 1.

[2] *Id.* at 2; *see also*, Defendant's Exhibit A-1 (Copy of Administrative Record), Bates labeled PRLCL 16.

[3] Defendant's Memorandum in Support of Motion for Summary Judgment, p. 1.

1

time it determined that O'Rear no longer met the policy's definition of disabled.[4] After exhaustion of administrative remedies, O'Rear petitioned this court for review pursuant to the Employee Retirement Security Act ("ERISA"). 29 U.S.C. § 1001, *et seq.*

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with affidavits, that demonstrate the absence of a genuine issue of material fact.[5] *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Topalian v. Ehrman*, 954 F.2d 1125, 1131-32 (5th Cir.1992), cert. denied, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden. See *Celotex*, 477 U.S. at 328, 106 S.Ct. at

---

[4] Defendant's Memorandum in Support of Motion for Summary Judgment, p. 8; PRLCL 284-88.

[5] A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.*; see also, *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

2555.

Once the movant has shown the absence of material factual issues, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, a party opposing summary judgment may not rest on mere conclusory allegations or denials in his pleadings. Fed.R.Civ.P. 56(e); see also, *Topalian*, 954 F.2d at 1131.

## ANALYSIS

*A. Standard of Review Under ERISA*

Paul Revere's denial of benefits is a discretionary, factual determination, reviewed by the court under the abuse of discretion standard.[6] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956 (1989). The abuse of discretion standard requires the court to determine whether the decision was arbitrary and capricious. *Meditrust Financial Serv. Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 214-215 (5th Cir. 1999). "A decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Id.* at 215 (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822,

---

[6] As the instant dispute does not involve an interpretation of plan language, it is not necessary for the court to employ the two-step analysis discussed in *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631, 637 (5th Cir. 1992).

3

828-29 (5th Cir. 1994)).

In determining whether Paul Revere abused its discretion, the only evidence the court may consider are the contents of the administrative record. *Vega v. National Life Ins. Serv., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). As such, the court "must inquire only whether the 'record adequately supports the administrator's decision'; from that inquiry it can conclude that the administrator abused its discretion if the administrator denied the claim '[w]ithout some concrete evidence in the administrative record.' *Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001) (quoting *Vega*, 188 F.3d at 302).

When the plan administrator is also the insurer and is vested with discretionary authority, the abuse of discretion standard is modified. In such conflict of interest cases, the court applies a "sliding scale" standard whereby "the greater the evidence of conflict on the part of the administrator the less deferential our abuse of discretion standard will be." *Vega*, 188 F.3d at 297. However, where, as here, the plaintiff presents no evidence of the degree of conflict, the administrator's decision is reviewed, "with only a modicum less deference." *Id.* at 301; see also, *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 343.

In the instant matter, O'Rear offered no evidence of a conflict of interest and did not file an opposition to Paul Revere's motion for summary judgment. Rather, O'Rear's complaint simply alleges that the policy at issue is a "'self-interested administered policy', [sic] which affords the 'sliding scale' evaluation... ." Nevertheless, the court will consider Paul Revere's self-interest as a "factor to be considered in determining whether the administrator abused its discretion in denying the claim." *Vega*, 188 F.3d at 299.

4

*B. Review of the Administrative Record*

On October 19, 2002, Paul Revere approved O'Rear's claim for Long Term Disability ("LTD") benefits.[7] Revere's policy defined "disabled" in two phases, the second phase commencing after 24 months of disability.[8] Shortly after the first phase began, O'Rear underwent back surgery and was subsequently under the care of Dr. Clark Gunderson.

During the remainder of the first phase, Dr. Gunderson issued three "Attending Physician Statements."[9] These three statements contain substantially the same information: O'Rear is totally disabled for an indefinite period of time and he is restricted to "No duty." After the issuance of Dr. Gunderson's third report, Paul Revere began a vocational assessment and thorough review of O'Rear's medical records.

The result of the vocational assessment was a determination that O'Rear could work in one of three occupations, considering his training, education, experience and physical abilities. The assessment also found that the identified occupations existed in the Lake Charles metropolitan area.[11] Based upon these findings, Paul Revere determined that O'Rear was not prevented from "engaging in *any* occupation" and therefore did not qualify as totally disabled under the second phase

---

[7] PRLCL 83-85.

[8] PRLCL 111. During the first phase, the employee is paid benefits for each month in which "he is totally disabled from *his own* occupation." During the second phase, the employee is paid benefits only if "he is totally from *any* occupation." *Id.* (emphasis added).

[9] PRLCL 86, 89, and 108.

[11] PRLCL 256.

definition.[12] In a letter dated July 30, 2004, O'Rear was notified that his benefits would terminate on September 19, 2004. The letter also advised O'Rear that if he disagreed with this finding, he had 30 days to submit additional information.[13]

On August 23, 2004, Kathy O'Rear, the plaintiff's wife, contacted Paul Revere and indicated that O'Rear had an upcoming appointment with Dr. Gunderson, scheduled for September 21.[14] In the meantime, Dr. Gunderson submitted a fourth physician's statement, which reported that O'Rear had constant hip and back pain; was totally disabled; and was still restricted to "No duty."[15] O'Rear also filed a statement indicating, *inter alia*, that he was in extreme pain, had limited movement, and that his condition continues to deteriorate.[16] Finally, on September 27, Dr. Gunderson faxed Paul Revere an "Estimated Functional Abilities Form" and a letter summarizing O'Rear's August 27 office visit. In short, the letter and form state that O'Rear suffered from progressively worsening pain and that his condition was unlikely to improve.[17]

On October 5, 2004, Paul Revere conducted an in-house medical review of the additional information submitted after the notice of termination. The reviewing clinician noted that there were no diagnostics or office notes to support the findings in Dr. Gunderson's September 27 fax.[18] The

---

[12] PRLCL 260-61 (emphasis added).

[13] *Id.*

[14] PRLCL 264.

[15] PRLCL 273.

[16] PRLCL 269-72.

[17] PRLCL 289-92.

[18] PRLCL 294.

clinician also stated that the "Estimated Functional Abilities Form" was "indicative of physical functional ability within the expected range for his [O'Rear's] clinical history."[19] Accordingly, Paul Revere found insufficient evidence to reverse its decision to terminate benefits.[20]

O'Rear was notified of Paul Revere's decision and submitted a written request for appeal on October 8, 2004.[21] On November 4, Paul Revere notified O'Rear that their decision to terminate was "factually and contractually supported" and therefore upheld.[22] The letter also advised O'Rear that his appeal period would be extended so that he could submit diagnostic test results and treatment notes.[23] O'Rear submitted no additional information.

Based upon the evidence in the administrative record, the court finds that Paul Revere was not arbitrary and capricious in denying benefits on September 29, 2004, or upholding that decision on October 8, 2004, and November 4, 2004.[24] Accordingly, Paul Revere's Motion for Summary Judgment will be granted.

---

[19] *Id.*

[20] PRLCL 296.

[21] PRLCL 300.

[22] PRLCL 306.

[23] PRLCL 305.

[24] As noted, the only evidence the court may consider are the contents of the administrative record. *Vega*, 188 F.3d at 300. O'Rear failed to reply to Paul Revere's Motion for Summary Judgment and thereby identify any favorable evidence contained in the record. In addition, despite several requests by Paul Revere to supply additional diagnostic and treatment information, O'Rear took no action.

Lake Charles, Louisiana, this 20 day of August, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

8